FILED
2016 Jul-19  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROGER DALE LESLIE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:15-CV-0286-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Roger Dale Leslie (hereinafter "Mr. Leslie") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Leslie timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **REVERSES AND REMANDS** the Commissioner's decision.

### STATEMENT OF THE CASE

Mr. Leslie was 51 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 186 *with* Tr. 43. Though he told one doctor he attended school until the tenth grade, he testified that he only completed the fifth or sixth grade. *Compare* Tr. 55 *with* Tr. 351. His past work experience includes employment as a delivery driver and greeter. Tr. 53, 70. He claims that he became disabled on June 1, 2010 due to anxiety, hypertension, plantar faciitis with bone spurs, panic disorder with agoraphobia, and peripheral neuopathy. Tr. 192, 28, 46. His last period of work ended on June 1, 2010. Tr. 162.

On August 10, 2011, Mr. Leslie protectively filed a Title II application for a period of disability and DIB. Tr. 77. On October 26, 2011, the Commissioner initially denied these claims. Tr. 78. Mr. Leslie timely filed a written request for a hearing on November 2, 2011. Tr. 86-87. The ALJ conducted a hearing on the matter on July 9, 2013. Tr. 43. On August 30, 2013, she issued her opinion concluding Mr. Leslie was not disabled and denying him benefits. Tr. 23. He timely petitioned the Appeals Council to review the decision on September 9, 2013. Tr. 22. On January 7, 2015, the Appeals Council issued a denial of review on his claim. Tr. 7.

Mr. Leslie filed a Complaint with this court on February 17, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered

on October 8, 2015. (Doc. 7). Mr. Leslie filed a supporting brief (Doc. 11) on December 18, 2015, and the Commissioner responded with her own (Doc. 12) on January 19, 2016.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has

3

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 26, 2015.

4

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.     Mr. Leslie met the insured status requirements of the Social Security Act

through December 31, 2015. Tr. 28.

2.      He had not engaged in substantial gainful activity since June 1, 2010, the alleged disability onset date. *Id.*

3.      He had the following severe impairments: hypertension, plantar faciitis[2] with bone spurs, panic disorder with agoraphobia,[3] and peripheral neuropathy.[4] *Id.*

4.      He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

5.      He had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except he could lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours of an eight hour workday, and stand and/or walk six hours of an eight hour workday. Tr. 31.

6.      He was able to perform past relevant work as a greeter. Tr. 36.

7.      Mr. Leslie had not been under a disability, as defined in the Social Security Act, from June 1, 2010, through the date of this decision. *Id.*

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its

---

[2]  Plantar faciitis is "inflamation...causing pain under the heel in walking and running." *Webster's Medical Desk Dictionary*, 552 (1986).

[3]  Agoraphobia is "an irrational fear of being in open or public places." *Webster's Medical Desk Dictionary*, 18 (1986).

[4]  Peripheral neuropathy is "a "degenerative state of the nerves", specifically the "cranial nerves." *Webster's Medical Desk Dictionary*, 474, 531 (1986).

responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Leslie urges this court to reverse the Commissioner's decision to deny his benefits on four grounds:  first, he argues that the ALJ failed to properly evaluate his condition under Listing 12.05(C); second, that the ALJ improperly discounted Dr. Saxon's opinion in determining his RFC; third, that the ALJ improperly evaluated his subjective testimony about his level of pain; and fourth, that the ALJ's determination of his RFC was based on a hypothetical question with faulty premises. (Doc. 11 at 13).

# I.   THE ALJ'S FAILURE TO FOLLOW THE PROPER LEGAL FRAMEWORK IN EVALUATING LISTING 12.05(C) IS REVERSIBLE ERROR.

To meet a Listing,[5] a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a-d). To equal a Listing, the medical findings must be "at least equal in severity and

---

[5]  Listings are contained in 20 C.F.R. § 404, Subpart P, Appendix 1.

duration to the listed findings." *See* 20 C.F.R. §§ 404.1526(a) and 416.926(a). The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Further, if the claimant contends that an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment has such an equivalency. *Wilkinson o.b.o. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). Though the ALJ must consider whether an impairment meets a Listing, there "may be an implied finding that a claimant does not meet a Listing." *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

Those portions of Listing 12.05 that are relevant to Mr. Leslie's appeal provide as follows:

> 12.05.   *Intellectual disability:*   Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.05.[6]

Subpart A of § 12.00 similarly describes the framework for evaluating a Listing claim premised upon intellectual disability:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00A.

---

[6] Consistent with the current language of Listing 12.05, the court uses "intellectual disability" instead of "mental retardation" throughout this opinion. "Intellectual disability" has the same legal meaning as "mental retardation." *Cf. Hall v. Florida*, __ U.S. __, __, 134 S. Ct. 1986, 1990, 188 L. Ed. 2d 1007 (2014) ("Previous opinions of this Court have employed the term 'mental retardation.' This opinion uses the term 'intellectual disability' to describe the identical phenomenon." (citing Rosa's Law, Pub. L. No. 111-256, 124 Stat. 2643 (2010))); *Conner v. GDCP Warden*, 784 F.3d 752, 755 n.1 (11th Cir. 2015) ("In this opinion, we use the term 'intellectual disability,' which has the same legal meaning as "mental retardation" did in *Atkins*.").

As the Eleventh Circuit has summarized:  "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Further, the court may look to more than one portion of the record when determining whether the claimant meets the Listing. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (acknowledging that a valid I.Q. score need not be conclusive of intellectual disability, when the I.Q. score is inconsistent with the other evidence in the record concerning the claimant's daily activities and behavior).

Generally, "the claimant meets the criteria for presumptive disability under … section 12.05(C) when the claimant presents a valid I.Q. score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work." *Crayton*, 120 F.3d 1219-20. The ALJ's decision never directly discusses Listing 12.05(C), but it can be inferred that the claimant does not meet a Listing, <u>if</u> the ALJ's decision contains substantial evidence to support such a finding. However, such an inference is not permissible on this record.

## A.   THE ALJ ANALYZES LISTING 12.06 ONLY AND DOES NOT DISPUTE THE VALIDITY OF THE I.Q. TEST UNDER LISTING 12.05(C).

The ALJ reviewed Mr. Leslie's disability claim only under Listing 12.06, not Listing 12.05. Tr. 29. In her analysis of the ALJ's decision, the Commissioner writes her brief as if the ALJ considered Listing 12.05. (Doc. 12 at 6-16). Not only is the Commissioner wrong, but also there are substantial differences between the two Listings. 12.06 is a Listing for "anxiety related disorders" and, unlike 12.05, does not utilize I.Q. scores as part of its evaluative framework. Mr. Leslie's I.Q. result was mentioned in the ALJ's decision merely as a reported medical finding, and the ALJ never discussed the score's validity under Listing 12.05. Tr. 34. The ALJ's failure to address the validity of Mr. Leslie's I.Q. score under Listing 12.05's framework goes beyond harmless error. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (failure to consider possibly important factors in determining mental impairment was not harmless error).

The Eleventh Circuit "has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). For

example, consideration of other evidence–such as a claimant's daily activities, atypical behavior, and educational achievements–is appropriate. *See Popp*, 779 F.2d at 1499 ("Moreover, the test results must be examined to assure consistency with daily activities and behavior."); *id* ("Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact [intellectually disabled].").

However, while the ALJ is not required to accept the results of an I.Q. test as reported by an expert, the ALJ "cannot act as both judge and physician." *See Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)). Put differently, substantial evidence must support the ALJ's discounting of an I.Q. score that is favorable to a claimant.

Dr. Saxon administered the Wechsler Adult Intelligence Scale-4th Edition ("WAIS") to Mr. Leslie, who earned a full-scale I.Q. score of 65. Tr. 34, 352. Therefore, Mr. Leslie's score falls squarely within the range of Listing 12.05(C). *See Popp*, 779 F.2d at 1499. Nothing in the record suggests that Mr. Leslie manipulated his score. *See* Tr. 352 ("his effort seemed to be quite genuine"). The ALJ reports this I.Q. score and never disputes it. Tr. 34. Though she later gives little weight to Dr. Saxon's opinions (Tr. 35), that discounting is in regard to the RFC analysis in step four, not as applied to the I.Q. test. Further, to the extent that the reason given by the

ALJ to discount Dr. Saxon's RFC opinion–his lack of access to Mr. Leslie's medical record–could, by itself, be a valid reason for rejecting Mr. Leslie's I.Q. results, *cf. Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 913 (11th Cir. 2015) (questioning whether discounting I.Q. score solely upon a narrative report that omits any comment about test's validity may not be sustainable on appeal), the court would be improperly speculating about the ALJ's assessment of Mr. Leslie's I.Q. score if it affirmed on that basis. *See Lowery*, 979 F.2d at 837 (remanding partly because basis for rejecting Listing 12.05(C) was unclear).

While the Commissioner's brief correctly points out that an ALJ can appropriately consider a claimant's work history and daily activities in order to dispute a dubious I.Q. outcome, in the absence of such analysis <u>by the ALJ</u>, the court's hands are tied. As the undersigned has previously held, "[i]t is … critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further." *Richardson v. Colvin*, No. 6:12-CV-0383-VEH, 2013 WL 4459850, at *15-16 (N.D. Ala. Aug 16, 2013) (citing *Thomas v. Barnhart*, No. 04-12214, 2004 WL 3366150, at *2 (11th Cir. Dec. 7, 2004)). Failure to address the validity of the score is an incorrect application of the law; it is an error that, oftentimes, must be corrected administratively. *Lowery*, 979 F.2d at 839 (remanding when the ALJ failed to

13

properly address the import of an I.Q. test).

Further, the ALJ's omission of 12.05(C) cannot be defended by arguing that Mr. Leslie's intellectual disability–if he has one–did not initiate before age 22. In the Eleventh Circuit, a person's I.Q. is presumed to remain constant throughout life, so "[a] valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two." *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1287 (N.D. Ala. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001)).[7] "The requirement that [an intellectual disability] or low I.Q. began prior to age 22 is met when nothing in the record reflects an incident in which claimant suddenly became [intellectually disabled]." *Durnham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (citing *Gant v. Sullivan*, 773 F. Supp. 376, 382 (S.D. Fla. 1991)).

Against this backdrop, Mr. Leslie benefits from the rebuttable presumption relating to the diagnostic requirement of Listing 12.05 because there is no evidence of a sudden occurrence that resulted in his alleged intellectual deficits. Similarly,

---

[7] In *Hodges*, the court formally recognized the presumption that "[w]hen a claimant presents a valid I.Q. score meeting the [§ 12.05] Listing criteria, the claimant is presumptively disabled under the Listing if the other requirements of the Listing have been met." *Jones v. Astrue*, 494 F. Supp. 2d at 1288 (citing *Hodges*, 276 F.3d at 1269). Before *Hodges*, the presumption had not been formally recognized, but the Eleventh Circuit had implicitly embraced it in *Lowery*, 979 F.2d at 837. *See Hodges*, 276 F.3d at 1269.

nothing in the ALJ's decision adequately explains why Mr. Leslie is not entitled to benefit from this rebuttable presumption.

## B. THE COMMISSIONER'S BRIEF FAILS TO DEMONSTRATE THAT IGNORING THE I.Q. TEST IS NOT REVERSIBLE ERROR.

Though the Commissioner's arguments that Mr. Leslie does not meet Listing 12.05 may, on remand, have merit, acceptance of such post hoc rationalizations that go substantially beyond the contents of the ALJ's opinion infringes upon the court's "function . . . to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *cf. id.* ("We are likewise unable to dispose of the waiver issue because of the incompleteness of the ALJ's [credibility] findings.").

Furthermore, nothing in the Commissioner's brief brings into question the foregoing discussion of *Lowery*, *Popp*, and other legal authorities favorable to Mr. Leslie. The Commissioner's brief (Doc. 12 at 8) points to § 12.00, the heading for mental disorders, which states that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the

developmental history and the degree of functional limitation." *Id.* (citing 20 C.F.R. § Pt. 404, subpt. P, app. 1.) The Commissioner argues that since Dr. Saxon did not have access to Mr. Leslie's complete medical report, he cannot provide such a narrative. (Doc. 12 at 8). For several different reasons, the court is not persuaded by this contention.

First, Dr. Saxon did provide a written evaluation of the I.Q. test. Tr. 352. Second, the ALJ's reference to the I.Q. score raises no concerns about how the test was administered or the contents of the narrative report that accompanied it. Tr. 34. Third, an unpublished Eleventh Circuit opinion, which the undersigned finds to be persuasive, indicates that even if the narrative portion were lacking, it is unlikely that the ALJ could reject Mr. Leslie's verbal I.Q. score on this basis alone. *See Frame*, 596 F. App'x at 913 ("[T]he regulations make clear that the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid . . . . [but] it is unlikely that the ALJ could reject Frame's verbal IQ score on this basis alone.") (internal quotations omitted) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D6a).

The Commissioner also points to several pieces of evidence that the ALJ considered when formulating Mr. Leslie's RFC in an effort to show that the ALJ implicitly discredited the validity of Mr. Leslie's I.Q. score. This evidence includes

Mr. Leslie's past employment history, personal grooming abilities, and time spent watching television. (Doc. 12 at 8-14). The Commissioner attempts to use this evidence–with numerous references to unpublished opinions–to show that the ALJ's decision would have been supported by substantial evidence had she expressly disregarded Mr. Leslie's I.Q. result or found that he did not satisfy the criteria for intellectual disability under Listing 12.05. However, it is not enough to say that "some rationale might have supported the ALJ's conclusion," *Owens*, 748 F.2d at 1516 (declining to affirm on basis of Appeals Council's post hoc explanation in support of ALJ's disability determination), especially when the ALJ's decision here failed to even acknowledge Listing 12.05, much less address the validity of Mr. Leslie's I.Q. result. *Cf. Owens*, 748 F.2d at 1515 ("[The ALJ's] articulation of the standard being applied was ambiguous at best, and suggests if anything that he in fact had an incorrect view of the Appeals Council's policy on joint bank accounts."); *id.* ("Even more serious was the ALJ's failure to make any finding at all on the credibility of the testimony relating to this issue."). The ALJ simply did not use any of this evidence in evaluating the proper Listing or discounting the I.Q. outcome and, thus, committed a reversible error.

The Commissioner cites *Perkins* to illustrate the types of information, in addition to an I.Q. result, that are relevant to evaluating a claimant's satisfaction

17

under Listing 12.05. *Perkins v. Comm'r, Soc. Sec. Admin*., 553 F. App'x 870 (11th Cir. 2014). Besides being an unpublished, non-binding opinion, *Perkins* is significantly distinguishable. Importantly, because the ALJ in *Perkins* directly addressed the credibility of the claimant's I.Q. scores, 553 F. App'x at 873, there was no legal error, unlike the present case. The same distinguishing factor applies to several other potentially persuasive opinions upon which the Commissioner relies.[8] In contradiction to the ALJ's performance in this case, in each of the cases so relied upon by the Commissioner, the ALJ fully considered the validity of the I.Q. score(s) in the context of Listing 12.05.

The Commissioner also emphasizes that Dr. Leonard–a paper review doctor–found that Mr. Leslie did not qualify under Listing 12.05(C) and that no I.Q. testing was necessary. (Doc. 12 at 15); Tr. 292, 296, 304. The Commissioner then points to the "substantial weight" assigned by the ALJ to Dr. Leonard's opinion. Tr. 35. However, the ALJ did <u>not</u> give "great weight" (Doc. 12 at 15) to Dr. Leonard's opinion on Listing 12.05, because the ALJ <u>never even discussed</u> that Listing. Instead, the ALJ gave "substantial weight" <u>to Dr. Leonard's RFC analysis.</u> Tr. 31-35. Since

---

[8] *McCune v. Astrue*, No. 12-3884, 2014 WL 1022587 (N.D. Ala. March 14, 2014); *Milner v. Barnhart*, 275 F. App'x 947 (11th Cir. 2008); *Harris v. Comm'r, Soc. Sec. Admin.*, 330 F. App'x 815 (11th Cir. 2009); *Garrett v. Astrue*, 244 F. App'x 937 (11th Cir. 2007); *Hampton v. Colvin*, No. 13-01473, 2014 WL 3729628 (N.D. Ala. July 25, 2014).

the ALJ never analyzed Listing 12.05, how the ALJ weighed the I.Q. and intellectual disability evidence provided by Dr. Leonard, if at all, is entirely speculative. The fact that evidence potentially exists in the record that could sustain a decision to reject Mr. Leslie's I.Q. result is not sufficient if the evidence is never discussed by the ALJ. *See Owens*, 748 F.2d at 1511 ("Because the ALJ did not provide us with the information essential to such an evaluation, we reverse with instructions to the district court to remand for further findings at the administrative hearing level."). Because Dr. Leonard's evaluation was exclusively used by the ALJ to support her RFC assessment and not to determine whether Mr. Leslie met Listing 12.05, the Psychiatric Review Technique conducted by Dr. Leonard cannot correct the legal error the ALJ committed at step three.

### C.   NO IMPLICATION EXISTS THAT MR. LESLIE DOES NOT HAVE AN 'ADDITIONAL AND SIGNIFICANT WORK-LIMITATION OF FUNCTIONING.'

12.05(C)'s second prong–as interpreted by the Eleventh Circuit in *Crayton*–requires an "additional and significant work-related limitation of function." An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). A significant impairment

19

can be less than the "severe impairment" found in step two under § 404.1520(c). *Heckler*, 755 F.2d at 1515.

At step two, the ALJ found that Mr. Leslie suffered from several "severe" impairments: hypertension, plantar faciitis with bone spurs, panic disorder with agoraphobia, and peripheral neuropathy. Tr. 28. Since "severe" is more limiting in degree than "significant," the ALJ's findings support an implicit conclusion that Mr. Leslie has an "additional and significant work-related limitation of function."

Therefore, on this record, no inference exists that Mr. Leslie would not meet Listing 12.05(C) <u>if</u> the ALJ had properly considered his claim under that particular Listing. An I.Q. test within the applicable range went undisputed, and the ALJ's severe impairment findings show that Mr. Leslie would meet the second prong. Thus, the ALJ erred by not considering Listing 12.05(C) and, more specifically, by not addressing (with an underlying explanation) whether to accept or dispute Dr. Saxon's I.Q. finding. Remand is the proper remedy for such an error. *See Davis*, 985 F.2d at 534 ("Generally, a reversal with remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards.").

## II.   SINCE THE CLAIMANT POTENTIALLY MEETS A LISTING, THE COURT DOES NOT REACH MR. LESLIE'S OTHER CONTENTIONS.

The court elects not to address Mr. Leslie's three remaining RFC-related issues

as they may be rendered moot by further proceedings consistent with the Listing 12.05(C) remand. Once a claimant meets a Listing, no further inquiry is required. *See Pope*, 998 F.2d at 477 ("[A claimant] will automatically be found disabled if [he] suffers from a listed impairment.").

CONCLUSION

The ALJ correctly found that Mr. Leslie has satisfied steps one and two of the five-step sequential evaluation process. However, under step three, the ALJ failed to follow the proper legal framework for determining whether Mr. Leslie was disabled under subpart C of Listing 12.05.

Therefore, based upon the court's evaluation of the evidence in the record and the submissions of the parties, this court finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings consistent with this memorandum opinion. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 19th day of July, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge